Good morning, your honors. I am Rita Griffith, and I am here on behalf of Brent Myers, who's appealing the district court's denial of his motion to suppress evidence seized from his truck by customs agents as he crossed the border from Canada to the United States. The issue on appeal is a very narrow issue. Whether customs officials can destroy property by drilling into it at will during border searches without having even a reasonable suspicion that evidence of a crime will be discovered. Was the drilling into a compartment below a secondary gas tank in Mr. Myers' truck so destructive a property that it required reasonable suspicion before it could be undertaken? In United States v. Flores-Montano, the Supreme Court of the United States expressly distinguished the removal, disassembly, and reassembly of a gas tank, which was at issue in that case, from the drilling cases and left open the question of whether drilling might be so destructive a property that it was unreasonable and could not be undertaken without a reasonable suspicion that evidence of a crime would be found. The drilling cases cited by the Supreme Court in Flores-Montano, and this, I think, is an important part of the decision, involve drilling into the body of a trailer, the drilling into machine parts, a camper. These are cases from the First, Fifth, and Tenth Circuit, and I believe since then, or separately, the Eleventh Circuit has held that drilling into the hull of a boat is also so destructive. Assuming there was no reasonable suspicion, let's just assume that for this question. How do you deal with our case that says you can slash a spare tire to pieces? Well, that was just the point that I was going to be making. Okay. Obviously, in Cortez-Roca, which, as I understand it, the petition for rehearing is still pending in that case, even though they have just issued an amended. The last time I checked, that was true. You may. I believe that. I'm not sure. It may be over. Okay. Let's just assume for our purposes that that case stands. Well, you know, I think that certainly narrows the case a lot more. They did seem to assume that the fact that it was at a border would take the place of probable cause, and then for that reason, you could do anything that you could do with a warrant or with probable cause. But Judge Frenan's question is, if you can do it in that case, why can't we do it in this case? What's the difference? What distinguishes this case from that case? That's the real question, isn't it? I think that is. And I was going to point out that in that case, they did continue to distinguish between the drilling cases. And I guess to some degree what I'm arguing to you is that if you – that Montanus – that Flores-Montanus is the controlling authority. And in that case, they didn't make the distinction that they rely on in Cortez-Roca, which was to assume that if you could go on about your business, then it wasn't too intrusive. And I'm – Well, that's true in this case. He can go on about his business. That's true. Therefore, it's not too intrusive. Well, if you accept the – if you follow the majority rather than the dissent in Flores – in Cortez-Roca, I think that is certainly a conclusion. Although there is – there is something left open in – in Cortez-Roca, which they do talk about the drilling cases, interestingly enough. And they do leave open the possibility in my reading of it that something might be so destructive that it would require reasonable suspicion. I'm asking you to look at the United States Supreme Court's decision in Flores-Montano and see that they didn't make that same distinction. They did use language saying, after all, this man could go on about his business, but they certainly didn't make that the test. In their discussion, they talked about the drilling cases. They referred to cases where clearly the person would be able to drive away. I mean, if you drill into machine parts or the body of a trailer, you're still going to be able to drive away, as in this case. And those are the examples they used. And then they concluded, after citing to those cases, that there might be cases that were so destructive of property that you would require reasonable suspicion. I guess my argument to you is that always, and this is, you know, back to Roca-Cortez, that we're always having to balance civil rights and your rights to property against the right and the need to be secure. And I'm suggesting, and I think that this is borne out by the decision in Flores-Montano, that reasonable suspicion is not too high of a burden. A person can do a lot of searching without having to drill into the gas tank. And in this case, it was very clear that they didn't have to do that. In fact, ultimately, they pumped up the gas and took it off, and they wouldn't have had to drill at all. And, you know, do we really want a law, I guess the policy that allows, without any suspicion, totally at will, to permanently destroy someone's property? You know, I guess I could also argue that this auxiliary gas tank was a little bit more permanent than a spare tire. A spare tire is one assumes they're going to blow and have to be replaced. That's a narrow distinction. I mean, for us, at least as it seems to me, the key issue is really whether Cortez-Roca is distinguishable, because even if it is not a wise application of Flores-Montano, unless or until it were changed by an en banc court or the Supreme Court, we have to, as a panel, follow it if we can't distinguish it in this case. Well, I guess my distinction would be that drilling into something that is contemplated as a permanent part of your equipment as opposed to a spare tire, which is not, I think that would be a distinction. And the other thing that I would point to was in the actual opinion in Cortez-Roca, they do talk about the drilling cases and they don't seem to, they seem to distinguish themselves that those cases from the case at hand. They do question whether all of those survive a Flores-Montano, but I think they clearly do because they're cited in Flores-Montano as examples of a case where it might be so destructive. One other question. We've been assuming, and I'll try to make this very quick. We've been assuming up until now that there was no reasonable suspicion. In this case, there is evidence that there was a citizen tip. I know all the arguments about that. But beyond the citizen tip, they found that he was excessively nervous. They used a fiber optics item to make, to see that the gasoline was only in the top tank. They thumped the bottom tank and found out the bottom tank had something solid in it. It was not a gasoline, not filled with gasoline. And then they went ahead with their drilling. Why wasn't there reasonable suspicion? Well, you know, I would ask Your Honor not to reach that issue because the district court expressly did not allow that argument to be made below. And I would suggest that what the issue was about reasonable suspicion in that case was started much before then. The point was that he got referred to secondary inspection because of a text hit, a message that appeared saying that he was a smuggler. And I would ask that you not reach that issue. In fairness, I think that Mr. Myers should get to present that. I'll save my last minute unless you have another question. Thank you, Your Honor. Thank you very much. Good morning. May it please the Court, counsel. My name, again, is Helen Bruner, and I'm here for the United States. This case is not distinguishable from Cortez Roca. What we have here is customs officials drilling into a box which is nothing more than a container on the back of a pickup truck. There may be a tank above it, but at its heart and its essence, it is nothing more than a container that can be removed. It appears from the outside clearly as a sort of like an add-on piece of equipment. I know it didn't come with the car or the truck at the time of manufacture. It looks that way or not from the outside? Your Honor, I believe that's correct. I did submit this morning the photographs that were attachment A to the government's response to the suppression motion. And in the upper left-hand corner, the first photograph there is actually a photograph of the tank. What this is is the ---- Well, that's the view of the ---- that's the view from the back of the ---- Pickup truck. ---- truck bed looking toward the cab. That's correct, Your Honor. There are two, as I understand it, two tool cases, tool boxes that are over the side of the pickup truck, and then this sits down in the middle. The gasoline tank or the fuel tank was the first nine inches on top. That could be lifted off if it were empty or you had the equipment to do that. And what they drilled into was the box below. There really is no distinguishing this case from Cortez Roca. And in any event, I think this case is distinguishable from any other. But apparently, is this correct, I have the impression that the customs officials or the border officials, when they drilled this part of the box, they were under the impression that at that particular location there was no gasoline or fuel. Is that right? Absolutely, Your Honor. They had at that point not only tapped the tank, but by that I mean knocking on the externals and noticing the differences in sound, but also had used a camera, fiber optics camera, to look inside the tank, noticed that they could not go down all the way to the full depth, and had also used what is called a buster to check the density, the differences in density. Which is sort of like a density measure of some kind? That's correct, Your Honor. And that was testified to at the evidentiary hearing. By that point, they knew there was a significant difference between the top of this box, if you will, and the bottom, and then they drilled into the bottom. So I really don't think there's any distinction between these situations. There's certainly nothing about this box on the back of the pickup truck that deals with the operation of the vehicle. And, in fact, it probably is less of a safety issue to put a quarter-inch hole into a piece of a metal box than it is to remove a spare tire. And it's for that reason that we ask the Court to affirm the district court. If the Court wishes, I can address the reasonable suspicion question that was raised by Judge Fernandez. But if the Court does not, I will rest on the brief. Thank you. We ask you to affirm. Thank you. Thank you. Real quickly, tires are more non-permanent than this item, the auxiliary gas tank, in the back of the truck. I think there are lots of permanent properties we would not like to see destroyed, even though it doesn't involve the operation and movement of our vehicle. And finally, in this case, it was very clear that there was a pump in the back. All they had to do was pump off the gasoline into the tank, which they ultimately did do. Drilling was unnecessary. And I think that if custom officials are allowed to drill at will, that there will be a lot of destruction of property, whether or not it's essential to moving the vehicle or not, and that they should have reasonable suspicion before they do that. Thank you, Your Honor. Thank you very much for your argument. United States v. Myers shall be submitted. We thank counsel for the spirited argument. And we'll proceed to United States v. Tony Lawrence Gust.
judges: Fernandez, Tashima, Gould